UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:13-CV-00114-LLK

TAMMY L. COCKE                                                                                        PLAINTIFF

v.

CAROLYN W. COLVIN                                                                                 DEFENDANT
    Acting Commissioner of Social Security

**MEMORANDUM OPINION AND ORDER**

Tammy Cocke filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security that denied her application for disability benefits. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.

Plaintiff asserts that the administrative law judge (ALJ) made several errors, but she focuses on her treating physician's opinion that her fibromyalgia likely results in routine absences from work of four or more days on a monthly basis, which, if accepted, would render her unemployable.

For the reasons discussed below, the Commissioner's final decision is AFFIRMED and the Plaintiff's Complaint is DISMISSED.

**Treating Physician Opinion**

In March, 2011, Plaintiff's treating physician, Christopher Morse, D.O., opined that her fibromyalgia symptoms would be expected to result in work absences four or more days a month. Administrative Record (AR), p. 423.

The vocational expert (VE) testified that this limitation, if accepted, would render Plaintiff unemployable as employers generally will not tolerate absences in excess of about two days a month. AR, p. 105. However, according to the VE, Dr. Morse's other findings are compatible with an ability to perform the jobs of sedentary surveillance system monitor and companion. AR, pp. 65 and 103-105.

1

The ALJ rejected Dr. Morse's medical opinion that Plaintiff will require a disabling level of absenteeism.[1]  AR, p. 65.

When an ALJ declines to give controlling weight to the opinion of a treating physician, as occurred in this case, the ALJ is required to give "good reasons" (as contemplated by 20 C.F.R. § 404.1527(c)(2)) for the weight given to that opinion because, even if it is not given controlling weight, it may be entitled to great weight.  The factors to be considered are:  "[1] the length of the treatment relationship and the frequency of examination, [2] the nature and extent of the treatment relationship, [3] supportability of the opinion, [4] consistency of the opinion with the record as a whole, and [5] the specialization of the treating source."  Plaintiff's fact and law summary, Docket 11, p. 1 quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.2004) based upon the factors listed at 20 C.F.R. § 404.1527(c)(1) through (5).

Plaintiff does not argue that Dr. Morse's disabling opinion regarding her rate of absenteeism is entitled to controlling weight.  Ordinarily, a treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(c)(2).  However, this test is difficult to apply in a fibromyalgia case because fibromyalgia is diagnosed based on ruling out other diagnoses and "present[s] no objectively alarming signs."  *Rogers v. Commissioner*, 486 F.3d 234, 243 (2007).

Plaintiff contends that the ALJ's decision does not satisfy the "good reasons" giving requirement of *Wilson*, supra, and 20 C.F.R. § 404.1527(c)(2).

---

[1] Arguably, this per-se disabling opinion going to the ultimate issue of disability was not a genuine medical opinion but rather a "medical source opinion[] on issues reserved to the Commissioner" as contemplated by 20 C.F.R. § 404.1527(d).  Such opinions are entitled to no "special significance."  Section 404.1527(d)(3).  Compare *Saulic v. Commissioner*, 2013 WL 5234243 (N.D.Ohio) (the doctor "did not 'know,' in the sense of an objective medical fact, that, if properly motivated, the plaintiff ... would require absences in excess of 4 days per month") and *Sharp v. Commissioner*, 2005 WL 2811812 (6th Cir.) (although the treating physician's opinion regarding absenteeims "come[s] close to stating an ultimate opinion about the existence of a disability," in this case, it "came at the end of extensive treatment" and was not based upon uncritical acceptance of the patient's subjective complaints).

2

The ALJ noted that Dr. Morse is a family practitioner. AR, p. 65. There is no evidence that he is a rheumatologist or other specialist in the area of fibromyalgia. Factor 5. He issued his opinion in a little more than a year after Plaintiff commenced treatment with him in December, 2009. AR, p. 331. By June, 2010, Plaintiff was "wanting to talk to [Dr. Morse] about getting her an excuse from work to draw work disability." AR, pp. 65 and 304. Factors 1 and 2.

The ALJ rejected Dr. Morse's disabling limitation regarding absenteeism because it appeared to be based on uncritical acceptance of the patient's subjective allegations of daily flare-ups (AR, p. 65), "[y]et, the evidence does not reflect the claimant repeatedly requiring emergency treatment that such a degree of pain would suggest." AR, p. 63. Factor 3.

In addition, the ALJ found Dr. Morse's absenteeism finding to be suspect because some of his other findings, although not disabling, were nevertheless excessive. For example, while Dr. Morse limited Plaintiff to lifting no greater than 10 pounds occasionally (AR, p. 423), Plaintiff indicated that among her significant daily activities was taking care of her physically-disabled late husband, who required dialysis, including disassembling, placing in the trunk of the car, and reassembling his motorized scooter, as well as occasionally taking care of her physically-limited grandmother. AR, pp. 65, 96-97, 379, and 423. During a consultative examination by Que Huong Nguyen, M.D., in December, 2010, Plaintiff demonstrated 5 out of 5 strength bilaterally in the upper and lower extremities. AR, pp. 64 and 355. Factor 4.

The ALJ gave "good reasons" for discrediting Dr. Morse's opinion that Plaintiff's fibromyalgia will result in a disabling rate of absenteeism.

### Plaintiff's Credibility

Because fibromyalgia is "an unusual impairment in that its symptoms are often not supportable by objective medical evidence," the usual test for evaluating the credibility of complaints of disabling

3

pain and other subjective symptoms[2] is not easily applied.  *Vance v. Commissioner*, 2008 WL 162942 (6th Cir.).  Nevertheless, a diagnosis of fibromyalgia does not automatically entitle a claimant to disability benefits.  "Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority."  *Vance* quoting *Sarchet v. Commissioner*, 78 F.3d 305, 307 (7th Cir.1996).

In fibromyalgia cases, due to an inherent lack of objective evidence, the ALJ typically focuses upon the claimant's activities of daily living or lack thereof, whether the medical records show that symptoms have progressively worsened, improved, or remained stable, and subtle factors that are not apparent on the face of the record such as demeanor.  *Vance*.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Id.* quoting *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir.1997).

In this case, the medical records do not reflect a progressive worsening.  According to the ALJ, "Dr. Morse is not practicing in the area now, and the claimant has since not consulted with anyone on a routine basis regarding fibromyalgia."  AR, p. 63.  In addition, as noted above, the ALJ found Plaintiff's daily activities of taking care of her late husband to be significant.  She engages in household chores such as cleaning, washing laundry, sweeping, mopping, and vacuuming and occasionally tries her hand at crocheting and needlepoint notwithstanding prescribed wrist splints.  AR, p. 63.

While it was perhaps a bit uncharitable to utilize Plaintiff's best efforts to care for her now-deceased husband and her crocheting pastime as counting against her credibility, it simply is not the Court's role, absent a compelling reason, to second-guess the ALJ's credibility assessment.  "The substantial-evidence standard ... presupposes that there is a zone of choice within which the

---

[2] If there is evidence of an underlying medical condition, the pain-credibility assessment focuses on 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain.  *Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir.1986).

4

decisionmakers can go either way, without interference by the courts." *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009).

**One-Time Examining Source Opinions**

Plaintiff argues that the ALJ did not give "good reasons" for preferring the opinion of the non-examining state agency program physician over that of the one-time examining consultant, Dr. Nguyen, and for preferring the program psychologist opinion over that of one-time examiner, Bruce Amble, Ph.D. Docket 11, pp. 3-4.

The ALJ was not required to give particularly "good reasons" for this preference because the preference for examining over non-examining source opinions is only a general rule. See 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). In addition, the "good reasons" giving requirement applies only to treating sources. See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ had a substantial basis for rejecting any finding from Dr. Nguyen that was in excess of those opined by the treating source, Dr. Morse. In addition, any finding from Drs. Nguyen and Amble must be regarded as a raw clinical finding, which the program source experts, translated into a complete RFC assessment, which the ALJ then accepted. See program physician's finding that some of Dr. Nguyen's findings constituted an "overestimate ... based only on a snapshot ... of functioning" and program psychologist's finding that some of Dr. Amble's findings were "too vague to assign weight." AR, pp. 113 and 127. The ALJ did not err in relying upon the state agency expert interpretation of the raw clinical findings of Drs. Nguyen and Amble.

5

**ORDER**

For the foregoing reasons, the Court AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's Complaint.